IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **LINCOLN FINANCIAL ADVISORS CORPORATION,**<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>**HEALTHRIGHT PARTNERS, LP and GRANT R. GIFFORD,**<br><br>　　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09CV650 DAK |

　　　　This matter is before the court on a Motion to Compel Arbitration, filed by Defendants Healthright Partners, LP ("Healthright") and Grant R. Gifford's ("Mr. Gifford") (collectively referred to as "Defendants"). A hearing was held on December 15, 2009. At the hearing, Plaintiff Lincoln Financial Advisors ("Lincoln") was represented by Eric Jenkins and Heidi Goebel. Defendants were represented by Mark Pugsley. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

　　　　In September 2009, Lincoln filed this declaratory judgment action, seeking a declaration that, pursuant to Financial Industry Regulatory Association ("FINRA") rules, Defendants are not "customers" of Lincoln and that Defendants therefore cannot require Lincoln to participate in the FINRA arbitration process, which Defendants have already initiated. In this Motion to Compel Arbitration, Defendants seek a ruling that they are customers of Lincoln and that Lincoln must therefore participate in the FINRA arbitration process.

Lincoln is a national broker-dealer of securities. Scott B. Gordon ("Mr. Gordon") served as a registered representative of Lincoln and the branch manager of the Salt Lake City branch of Lincoln. The gravamen of dispute between the parties is that Defendants (who are the plaintiffs in the arbitration proceeding) claim that Lincoln failed to supervise Mr. Gordon, who allegedly defrauded them in connection with the sale of $3,375,000 worth of stock in a company that Gordon ran called HealthRight, Inc.

Defendants claim that they trusted Mr. Gordon because he was a manager and "Co-regional CEO" for Lincoln, and they were not aware that their HealthRight investments were not approved investment products. Defendants claim they were "pitched" on this investment in Lincoln's offices, and all of the sales presentations were made by Mr. Gordon, who handed them his Lincoln business card and emphasized his managerial position at Lincoln to gain their trust. Defendants allege that Mr. Gordon assisted in forming Defendant HealthRight Partners, LP ("HRP"), a limited partnership whose purpose was to raise capital for HealthRight. HRP was run by Shawn Smart, who was a Lincoln customer and a client of Mr. Gordon's. Several other members of the LLC were also Lincoln customers. Defendants claim that they lost their investments with HealthRight as a result of unscrupulous conduct by Mr. Gordon.

According to Lincoln, Mr. Gordon was terminated by Lincoln in September of 2006, shortly after Lincoln learned of his actions in promoting and selling HealthRight stock, among other actions. Lincoln claims that Defendants have never held an account with Lincoln and they have never paid investment fees or commissions to Lincoln. Lincoln also argues that HealthRight stock and investments were not authorized as investments by Lincoln, Mr. Gordon's sales of HealthRight stock to the Defendants were not approved by Lincoln, the sales were not reported to Lincoln, and the shares were never held in any Lincoln brokerage account. Also,

Lincoln never received any commissions or fees as a result of Mr. Gordon's sales of HealthRight stock.

## DISCUSSION

FINRA Rule 12200 governs whether FINRA members must submit to FINRA arbitration. FINRA Rule 12200 states that a dispute must be arbitrated under the Code if:

Arbitration under the Code is either:

(1)     Required by a written agreement, or

(2)     Requested by the customer;

• The dispute is between a customer and a member or associated person of a member; and

• The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

The Tenth Circuit has consistently held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Williams v. Imhoff,* 203 F.3d 758, 764 (10th Cir. 2000).   Since the passage of the FAA in 1925, and with more and more emphasis over the past thirty years, the United States Supreme Court has asserted a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).   "[T]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which the parties [have] entered, a concern which requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at

hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Consequently, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 627 (emphasis added).

It is well settled that members of FINRA are contractually bound to arbitrate disputes – including disputes with third parties who were not direct customers – through FINRA arbitration. *See World Group Sec., Inc. v. Sanders*, No. 2:06-CV-107, 2006 WL 1278738, at *4 n. 17 (D. Utah, May 8, 2006) (finding that the [FINRA] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims, including claims against other members); *see also MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004) (compelling a brokerage firm to arbitrate a case with a non-customer even though there was no direct agreement to arbitrate, finding that the NASD Code itself constitutes the agreement to arbitrate); *Vestax Sec. Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir. 2002) (the NASD Code creates the right of parties to compel an NASD-member firm to arbitrate even in the absence of a direct transactional relationship with the firm).

The FINRA Code obligates members such as Lincoln to arbitrate disputes with other members, clients, or third parties even in the absence of a separate signed agreement with such parties. *See Cal Fina Group, Inc. v. Herrin*, 379 F.3d 311, 317-18 (5th Cir. 2004) (non-clients are able to demand arbitration in a failure to supervise case); *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863-64 (2nd Cir. 1994); *Washington Square Sec. Inc. v. Aune*, 385 F.3d 432,435 (4th Cir. 2004).

Moreover, in a "selling away" case that was recently argued, this court held that the existence of a contractual agreement to arbitrate is not required for the investor to be considered a "customer" under Rule 12200:

> Even if there was not a clear contractual agreement to arbitrate, this court has

4

recognized that in the securities context "[r]ecent cases ... almost uniformly hold that 'even if "there is no direct written agreement to arbitrate ..., the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants."'" Members of FINRA are bound through the NASD Code of Arbitration to arbitrate disputes through FINRA arbitration.

*Sparks v. Saxon Investments, LLC*, No. 2:09-CV-00151, 2009 WL 2886029, *3 (D. Utah, Sept. 3, 2009) (quoting *World Group Sec. Inc.* 2006 WL 1278738 at *4 n. 17); *see also WMA Securities, Inc. v. Ruppert,* 80 F. Supp. 2d 786, 788 (S.D. Ohio 1999).

Accordingly, the court finds that Lincoln must submit to arbitration because (1) as a member of FINRA, Lincoln is required to submit this dispute to arbitration in its own forum, and (2) FINRA's Code of Arbitration Procedure and cases involving similar facts define the term "customer" very broadly, finding that "when an investor deals with a member's agent or representative, the investor deals with the member." *Sparks*, 2009 WL 2886029 at *3. This is a classic "selling away" case and, at the time Mr. Gordon solicited this investment, he was the branch manager and "regional Co-CEO" of Lincoln's Salt Lake City office, and therefore an "associated person" of Lincoln.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration is GRANTED. Because the ruling on this motion disposes of the controversy between the parties, this Clerk of the Court is directed to close this case. All parties are to bear their own costs.

DATED this 22nd day of January, 2010.

BY THE COURT:

_____
Dale A. Kimball
United States District Judge